**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**VINCENT SCOTT SHEPHERD,**

     **Plaintiff,**

**vs.**                          **CASE NO. 5:23-CV-00094-TKW-MAF**

**MARTIN J. O'MALLEY,
Comm'r of Social Security Admin.[1],**

     **Defendant.**

_____/

## ORDER AND REPORT AND RECOMMENDATION

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Vincent Shepherd's Title II application for a period of disability and Disability Insurance Benefits (DIB). After careful consideration and review of the record, for the reasons stated, the Commissioner's decision should be **REVERSED AND REMANDED**.

## I.  Procedural History

On March 27, 2022, Shepherd filed an application for a period of disability and DIB alleging his disabilities began on June 1, 2016. Tr. 99,

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner/. The Clerk of Court is directed to correct the case style to reflect the proper name of the Commissioner.

216-17. Shepherd alleged he was unable to work due to back problems, sleep apnea, high blood pressure, anxiety, depression, post-traumatic stress disorder (PTSD), and mood swings. Tr. 106-07, 122, 129, 134, 244, 247.

On June 22, 2022, the agency initially denied Shepherd's claim and, again, upon reconsideration on July 12, 2022. Tr. 119-22, 126-29. Shepherd requested an administrative hearing. Tr. 135. On November 9, 2022, Administrative Law Judge (ALJ), Andrew Dixon, III, presided over the telephonic hearing. Tr. 36-65. Shepherd was represented by counsel. Id. Plaintiff Shepherd and Nicholas Fidanza, an impartial vocational expert (VE), testified at the hearing. Tr. 4-59 (Shepherd's testimony); Tr. 59-64 (Fidanza testimony); Tr. 293-95 (Fidanza's resume). The ALJ admitted medical records and other exhibits relating to Shepherd's claims, specifically, "1 through 6A, 1 through 15B, 9D, 15E, [and] 1 through . . . 7F." Tr. 40-41.

On December 13, 2022, ALJ Dixon issued a decision denying Shepherd's application for benefits. Tr. 19-35. ALJ Dixon purportedly considered "all the evidence," including the medical records, and found that Shepherd was not disabled. Tr. 20, 24. Shepherd requested a Review of Hearing Decision on December 19, 2022. Tr. 15. The Appeals Council denied review on February 26, 2023, making ALJ Dixon's decision the final decision of the Commissioner. Tr. 1-4. On April 23, 2023, Shepherd filed a

complaint with this Court. ECF No. 1. The Commissioner filed an answer on June 5, 2023. ECF No. 7. The parties filed memoranda of law, which the undersigned considered. ECF Nos. 9, 12.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[2] The

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if he is under a

disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and to the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). A claimant bears the burden of proving he is disabled and, consequently, is responsible for producing evidence in support of the claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

An ALJ was required to weigh a medical opinion under prior regulations applicable to claims filed before March 27, 2017. See 20 C.F.R. § 404.1520c, abrogating the "'treating-physician rule.'" Harner v. Soc. Sec. Admin.,

Comm'r, 38 F.4th 892, 896 (11th Cir. 2022). However, the regulations applicable to this case remove the treating source rule and state an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." See 20 C.F.R. § 404.1520c(a).

Stated otherwise, "ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our prior caselaw in the past." Webster v. Kijakazi, 19 F.4th 715, 718-19 (5th Cir 2021) (citing "82 Fed. Reg. 5853 (Jan. 18, 2017) (commenting that the rule change would enable courts to focus on 'the content of the evidence [rather] than on the source.'")).

The relatively new regulations control consideration of the proper weight given to medical opinions. See 20 C.F.R. § 404.1520c(a)-(c); see also 20 C.F.R. § 404.1513(a)(2) (defining medical opinion). The regulations contain a source-level articulation requirement, i.e., the ALJ considers multiple medical opinions from a source in a single analysis. 20 C.F.R. § 404.1520c(b)(1). The ALJ is not required to address every limitation identified by a medical source. Id.

Under the regulations applicable to this case, an ALJ must consider and assess medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) the

specialization of the medial source; and (5) other factors that tend to support or contradict a medical opinion, including the source's familiarity with other evidence in the claim, or understanding of SSA policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)-(5). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. § 404.1520c(a); see also Webster, supra. "Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).

Regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regarding "consistency," "[t]he more consistent a prior medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R.

§ 404.1520c(c)(2). "A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). "When we consider the medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5). "[ALJs] are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1).

When a claimant attempts to establish a disability based on his subjective complaints, he must provide evidence of an underlying medical condition in either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition reasonably could be expected to give rise to the alleged symptoms. See 20 C.F.R. § 404.1529(a) and (b); Wilson, 284 F.3d at 1225-26.

Furthermore, pain is subjectively experienced by the claimant, but that does not mean that only a mental health professional may express an

opinion as to the effects of pain. One begins with the familiar way that subjective complaints of pain are to be evaluated:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1224. See 20 C.F.R. § 404.1529 (explaining how symptoms and pain are evaluated); 20 C.F.R. § 404.1545(e) (regarding RFC total limiting effects). This is guidance for the way the ALJ is to evaluate a claimant's subjective pain testimony because it is the medical model, a template for a treating physician's evaluation of a patient's experience of pain.

To analyze a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third-party and claimant's statements; the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; the type and dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; treatment, other than medication, received for pain or other symptoms; and other factors concerning functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(1), (3)(i-vii). The Eleventh Circuit has stated: "credibility

determinations are the province of the ALJ." Moore, 405 F.3d at 1212 ("The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole.").

The credibility of the claimant's testimony must be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988). If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility. See Wilson, 284 F.3d at 1225. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Id. On the other hand, "[a] clearly articulated finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

## III.   ALJ Dixon's Findings

ALJ Dixon properly articulated and followed the five-step sequential evaluation process for determining disability. See 20 C.F.R. § 416.920(a). In doing so, ALJ Dixon made the following findings:

1.     **"The claimant last met the insured status requirements of the Social Security Act on December 31, 2018."** Tr. 21. This fact does not appear to be in dispute.

2.     **"The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2017, through his date last insured of December 31, 2018. (20 CFR 404.1571 *et seq.*)."** Tr. 21. This fact is in dispute because Shepherd claims his alleged onset date is June 1, 2016.

3.     **"Through the date last insured, the claimant had the following severe impairments: anxiety, post-traumatic stress disorder, depression, tinnitus, degenerative joint disease of the ankle, degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and migraines (20 CFR 404.1520(c))."** Tr. 21. According to ALJ Dixon, these conditions are "severe . . . because they significantly limit the claimant's ability to perform basic work activities, in that they have more than a minimal effect on the claimant's ability to perform basic work activities." Tr. 22. This fact appears to be in dispute because Shepherd argues his right shoulder impairment is not included.

4.     **"Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically**

**equaled the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526."** Tr. 22. ALJ Dixon found there was "no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment." Tr. 23. This fact is in dispute because Shepherd contends his migraines impact his ability to function. In addition, there is no account for his right shoulder impairment. Ultimately, ALJ Dixon concluded that Shepherd experienced "moderate limitations" in any paragraph B criteria, "the evidence fails to establish the presence of the 'paragraph C' criteria. The records failed to support a highly supportive living arrangement or only marginal ability to adjust." Tr. 24.

5.     **"After careful consideration of the entire record, the undersigned finds that . . . claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift and carry and push and pull 10 pounds frequently and 20 pounds occasionally; no climbing ladders, ropes, and scaffolds; occasionally climbing stairs and frequently ramps; frequent balancing; occasionally kneeling, couching, crawling, and stooping; frequently reach, handle, finger, and feel; tolerating occasional exposure to hazards such as heavy machinery, unprotected heights and loud noises; sitting six-**

**eight hours a workday; standing up to four of eight hours in a workday; and walking up to four of eight hours in a workday. He is limited to understand, remember, and carry out simple instructions as well as performing simple tasks due to concentration deficits defined as the ability to apply common sense understanding to carry out uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. He can interact with coworkers but only on occasional basis, however the person can accept instructions and respond appropriately to supervisors frequently. He can interact with the public on a less than occasional basis. He can engage in no more than occasional complex decision making with no more than occasional changes in the work setting or environment."** Tr. 25. This fact is in dispute because it does not consider Shepherd's limitations relating to his migraines and right shoulder impairment.

6.    **"Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565)."** Tr. 28. This fact is not in dispute.

7.    **"The claimant was born on . . . and was 53 years old, which is defined as an individual closely approaching advanced age, on the**

date last insured (20 CFR 404.1563)." Tr. 29. This fact is not in dispute.

8.   **"The claimant has at least a high school education (20 CFR 404.1564)."** Tr. 29. This fact is not in dispute.

9.   **"Transferability of job skills is not material to the determination of disability."** Tr. 29. This fact is not in dispute.

10.   **"Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a)."** Tr. 29. This fact is in dispute because Shepherd claims there a no jobs that exist in significant numbers in the national economy that he could perform.

11.   **"The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2017, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g))."** This fact is in dispute.

## IV.   Shepherd's Contentions

Shepherd presents the following five issues for review[4]:

---

[4] This Report does not address or list the issues for review in the order in which they are presented in "Plaintiff's Memorandum in Support of the Complaint." See ECF No. 9.

1. ALJ Dixon's decision to change Shepherd's disability onset date from June 1, 2016, to November 1, 2017, is not based on substantial evidence or any documentation. ECF No. 9, p. 2.

2. ALJ Dixon erred by failing to consider or reference Shepherd's right shoulder impairment in his decision although the record documents degenerative joint disease and rotator cuff tear in the right shoulder and his testimony that the right shoulder impacts his functional abilities. Id., p. 2.

3. ALJ Dixon's finding that Shepherd's migraines constitute a severe impairment without explaining how the migraines affect his RFC is not based on substantial evidence and constitutes legal error. Id., p. 1.

4. ALJ Dixon did not identify and resolve inconsistencies between the Dictionary of Occupational Titles (DOT) and the VE's testimony given that Shepherd was limited to occasional exposure to loud noise, but the entire job of injection molding tender requires working around loud machinery. Also, the ALJ limited Shepherd to no more than four hours of standing and no more than four hours of walking. All three jobs the ALJ found Shepherd could perform required up to six hours of standing and up to six hours of walking in an eight-hour workday. Id., p. 1.

5. ALJ Dixon's decision that there are 215,000 jobs in the national economy available to Shepherd based on the VE testimony is not supported by substantial evidence where Job Browser Pro indicates there are less than 13,000 such jobs in the national economy. Id., p. 2.

---

Rather, they are addressed in the order in which an issue must be resolved before proceeding to the next step of the five-step sequential process.

A. <u>Shepherd's disability onset date was incorrectly determined.</u>

Shepherd contests his purported disability onset date. <u>Id.</u>, pp. 16-18. Shepherd's application alleged his disability onset date was June 1, 2016. <u>Id.</u>, p. 17. Shepherd claims the hearing transcript shows his attorney amended the disability onset date to "[INAUDIBLE] 1 OF 17 [INAUDIBLE]" but the record does not include any documentation to support ALJ Dixon's decision. <u>Id.</u>, pp. 1, 17. If it is unclear whether an ALJ adjudicated the correct period of disability, a remand is warranted. <u>Id.</u>

B. <u>Shepherd's right shoulder impairment was not considered</u>

Shepherd claims ALJ Dixon did not consider his right shoulder impairment. <u>Id.</u>, pp. 18-19. An ALJ is required to consider each alleged impairment; and failure "to consider a claimant's condition despite evidence in the record of the diagnosis," is reversible error. <u>Id.</u>, p. 18. ALJ Dixon failed to reference the right shoulder impairment although the record shows a rotator cuff tear and degenerative changes of the acromioclavicular joint; thus, the decision is not supported by substantial evidence. <u>Id.</u>, p. 19.

C. <u>Shepherd's migraines are a severe impairment.</u>

Shepherd claims ALJ Dixon failed to identify any limitations related to his migraines. <u>Id.</u>, p. 12. ALJ Dixon found the migraines were a "severe impairment" but did not "perform a function-by-function analysis to determine

the effect the . . . migraines have on Shepherd's RFC as required by law." Id., p. 14. The decision does not explain "how the severe impairment restricts Shepherd's RFC." Id. ALJ Dixon only stated that the Department of Veterans Affairs (VA) assigned the migraines a disability rating of 30%. Id. ALJ Dixon did not "articulate what Shepherd's significant limitations were from that impairment, or if there were not any such limitations, state that the [impairment in question was] a non-severe impairment." Id., pp. 14-15. Therefore, "the ALJ's decision was legally insufficient and unsupported by substantial evidence." Id., p. 16

D. Shepherd's RFC limits him to occasional exposure to loud noise and no more than four hours of standing and no more than four hours of walking.

Shepherd maintains that ALJ Dixon did not identify and resolve the inconsistencies between the VE's testimony and DOT regarding the RFC limitations. Id., p. 1. ALJ Dixon limited Shepherd *occasional* exposure to loud noises and "light work," with no more than four hours of standing and no more than four hours of walking within an eight-hour workday. Id., pp. 6-12. However, the Selected Characteristics of Occupations ("SCO") shows that an injection molding tender works *entirely*, not occasionally, around loud machinery. Id., pp. 8-9.

Although ALJ Dixon found Shepherd could perform three jobs in the national economy, these jobs require up to *six* hours of standing and up to *six* hours of walking, according to the SCO. Id., p. 10. A remand is necessary to clarify Shepherd's limitations and RFC assessment because "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Id., pp. 11-12.

E. Substantial evidence does not support the VE's testimony that there are 215,000 jobs available in the national economy where Job Browser Pro indicates there are less than 13,000.

Shepherd claims that ALJ Dixon's conclusion that there are jobs in significant numbers in the national economy he can perform is not supported by substantial evidence because the VE's testimony was flawed and unreliable. Id., pp. 19-24. ALJ Dixon found Shepherd could perform the jobs of electronics worker, DOT #726.687-010, with 70,000 jobs; plastics worker, DOT #712.687-010, with 100,000 jobs; and injection molding tender, DOT #556.685-038, with 45,000 positions. Id., p. 22. The VE calculated there were 170,000 jobs by taking nearly all the jobs from "Production Workers, All Other" and posing them as electronics workers and plastic assemblers. Id., pp. 22-23. This methodology was rejected by Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1277 (11th Cir. 2020). In contrast, Job Browser Pro states there are only 98 electronics worker jobs and 38 plastics assembler jobs in

the national economy. Id., pp. 22-23. Substantial evidence does not support ALJ Dixon's decision.

Based on the above, Shepherd seeks a remand with instructions to award benefits or, alternatively, to "remand the case under the fourth sentence of 42 U.S.C. § 405(g)" to resolve the conflicts between the VE's testimony and the DOT, to consider the limitations of Shepherd's migraines, to determine the proper alleged disability onset date, consider the right shoulder impairment, and evaluate the impact on Shepherd's RFC, and to obtain reliable job number data information. Id., p. 24. Shepherd also asks the Court to order the agency to issue "a new decision based on substantial evidence and proper legal standards."

## V.    Commissioner's Response

The Commissioner contends that there is substantial evidence and that proper legal analysis support's ALJ Dixon's decision finding Shepherd is not disabled. ECF No. 12. ALJ Dixon evaluated the entire record and properly assessed Shepherd's RFC. Even if the Court disagrees with the decision or would resolve the factual issues differently, the decision must be affirmed if it is supported by substantial evidence in the record. Id.

A. There is no error in the ALJ relying upon Shepherd's attorney's request to amend the alleged disability onset date.

The Commissioner points out that the claim that there is no evidence

to support a finding that Shepherd's alleged disability onset date is November 1, 2017, is contradicted by his own attorney's request to amend the date at the hearing. Id., p. 16. Shepherd's attorney amended the alleged onset date at the hearing because the first, unfavorable disability decision issued October 12, 2017. Id., p. 17. An original onset date of June 1, 2016, would have created an adjudication period that would be barred by *res judicata*. Id. Shepherd's counsel did not challenge this finding when seeking review of the decision to the Appeals Council; therefore, the argument was forfeited. Id. Substantial evidence supports this decision.

B. Shepherd did not establish greater functional limitations from his alleged right shoulder impairment.

The Commissioner contends that, contrary to Shepherd's assertions, he did not testify to any functional limitations relating to his shoulder except for mentioning that "because of my back and shoulders I can't mop so much." Id., p. 18. The medical records show that Shepherd complained of right shoulder pain in September 2015, well before the relevant period. Id. There is no evidence of any rotator cuff tear or more than "degenerative change of the acromioclavicular joint." Id., p. 19. A diagnosis does not establish work-related limitations. Id. In denying Shepherd's first application for benefit, an ALJ rated the shoulder impairment and limited Shepherd to "the full range of light work." Id. ALJ Dixon's decision added additional limitations and found

Shepherd more functionally limited than the prior ALJ. Id., pp. 19-20. Shepherd did not cite to or discuss any functional limitations.

C. ALJ Dixon properly considered the migraines as a severe impairment but there was no objective evidence or subjective complaints to support any greater functional limitations.

The Commissioner argues that ALJ Dixon properly considered Shepherd's migraines as a severe impairment. Id., pp. 13-14. The only record evidence of the migraines is the VA's disability rating; and Shepherd did not cite to or discuss any functional limitations. Id., pp. 14-16. A diagnosis alone does not establish work-related limitations. Id., p. 15. Furthermore, Shepherd does not offer any discussion about what functional limitations result from his migraine headaches and failed to meet his burden with either objective evidence or subjective complaints of greater functional limitations or an inability to work at all. Id., pp. 15-16.

D. The injection molding tender job conflicts with Shepherd's RFC.

The Commissioner concedes that work as an injection molding tender requires more than occasional exposure to loud noise. Id., p. 8. However, the Commissioner contends remand is not warranted because Shepherd is able to perform two other jobs in the national economy, namely, electronics worker and plastics assembler. Id., p. 9. These two positions represent 170,000 remaining jobs. Id., p. 13. The Commissioner relies on Viverette v.

Comm'r of Soc. Sec., 13 F.4th 1309, 1317 (11th Cir. 2021). Id., pp. 9-12. Moreover, because Shepherd did not question the VE at the hearing, he cannot raise the issue now. Id., p. 11.

E. There is no inconsistency between the RFC limitations and the jobs identified by the VE.

The Commissioner argues that Shepherd's claim that the VE's testimony is inconsistent with a finding that he can perform "light work" with an RFC limiting sitting six to eight hours and standing up to four hours and walking up to four hours of an eight-hour workday is contrary to a clear reading of the applicable regulations. ECF No. 12, pp. 5, 23. Substantial evidence supports ALJ Dixon's decision because a significant number of jobs remain; thus, the error was harmless. Id., pp. 5-6, 9, 11-13.

The Commissioner contends substantial evidence supports ALJ Dixon's finding that Shepherd had the RFC to perform "light work." Id., p. 6. The regulation defines "light work" as having frequent walking or standing, which can occur from one-third to two-thirds of the time -- as little as 2.67 hours per day. Id., p. 7. Under SSR 83-10, the total amount of standing or walking is approximately six hours of an eight-hour workday. Id. "The logical implication of the ALJ's limitation to standing up to 4 hours and walking up to 4 hours per day necessarily adds up to more than approximately 6 hours total"; therefore, a remand is unwarranted. Id., p. 7.

Finally, Shepherd cannot rely on data from Job Browser Pro, "a third-party software program developed by a non-governmental entity and an Occupational Requirements Survey," because this was not presented at the hearing, there was no objection to the VE's testimony, and the sources were not used or considered by the VE. Id., p. 24. No contradictory data was submitted to the ALJ during the administrative proceeding; this forfeits the claim. Id. A federal court can only review the information before the agency and presented to the ALJ at the time of its decision. Id., p. 25 citing Valdez v. Comm'r of Soc. Sec., 808 F. App'x 1005, 1009 (11th Cir. 2020) and Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1286 (11th Cir. 2019).

## VI.   Legal Analysis

A. ALJ Dixon properly determined the alleged disability onset date.

According to Shepherd, his disability onset date was June 1, 2016, and there is no documentation to substantiate ALJ Dixon's finding that the onset date was November 1, 2017, except for an inaudible transcript, which states "1 of 17." There is no error.

The disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20. "Although a claimant's alleged onset date is the starting point for determining the disability onset date, the ALJ need not adopt that date if it is unsupported by the medical

evidence." Moncrief v. Astrue, 300 F. App'x 879, 880-81 (11th Cir. 2008) citing Moore, 405 F.3d at 1211. See also Keane ex rel Parcelles v. Comm'r of Soc. Sec., 205 F. App'x 748 (11th Cir. 2006) (claimant revised his onset date and challenged the ALJ's onset date on appeal but substantial evidence supported the ALJ's finding that the disability onset date was one submitted by the claimant despite having medical problems at an earlier date). The doctrine of administrative *res judicata* bars relief based on the period before the date on which the Commissioner's denial of a claimant's first application became final. See Brown v. Sullivan, 921 F.2d 1233, 1237 (11th Cir. 1991).

This is Shepherd's *second* attempt to get disability benefits. The record shows Shepherd first applied for a period of disability and DIB on March 17, 2016, alleging a disability onset date of March 31, 2015. Tr. 75. The first ALJ, Evangeline Mariano-Jackson, issued a decision on October 12, 2017, finding Shepherd had severe impairments, but he was not disabled. Tr. 87. ALJ Mariano-Jackson considered Shepherd's treatment records, at least, through April 2017. Tr. 83.

Here, a disability onset date of June 1, 2016, falls within the period of Shepherd's *first* application for benefits. Moreover, at the administrative hearing on November 9, 2022, Shepherd's counsel, Tom Furr, correctly

moved to amend Shepherd's disability onset date because the first application for disability was denied:

> ALJ:  . . . we have, alleged onset date of June 1, 2016, filing date of May 27, 2022[,] and a date last insured of December 1, 2016. Is that consistent with your understanding? (Tr. 39).

> Atty:  Yes, Your Honor . . . (Tr. 40).

> ALJ:  I do see what appear[s] to be [INAUDIBLE] but imagine that they are coming from the [INAUDIBLE] retirement benefits. And I do note there was a prior claim that was denied at the hearing level by the Honorable [Evangeline Mariano-Jackson][5] . . . back in 2017 it appears. [INAUDIBLE] medically determinable impairments in this case, sir? (Tr. 41).

> Atty:  Anxiety disorder, PTSD, depressive disorder, migraine headaches, tinnitus, [INAUDIBLE], degenerative joint disease of the ankle, degenerative joint disease of the bilateral knees, lumbar degenerative disk disease with radiculopathy. (Tr. 41).

> ALJ:  Any opening argument or statement that you would like to state before we get started with the testimony? (Tr. 42).

> Atty:  Yes, Your Honor. Thank you. First, in Exhibit 1A, as you mentioned [INAUDIBLE] decision I think that was 10-12-2017, and the onset before that [INAUDIBLE] application date. I would like to make a motion to amend the onset date to be that of [INAUDIBLE] 1 of 17 [INAUDIBLE] decision. (Tr. 42).

---

[5] The transcript spells ALJ Mariano-Jackson's name phonetically. Tr. 41. The proper spelling is found on ALJ Mariano-Jackson's decision denying Shepherd's first application for disability benefits. Tr. 87.

ALJ:  Okay. (Tr. 42).

ALJ Dixon explained in the decision that although Shepherd's alleged disability onset date was June 1, 2016, Shepherd "amend[ed]" it to November 1, 2017, at the hearing. Tr. 19. This decision is supported by "the records contain[ing] a prior decision by an [ALJ]. The claimant amended his alleged onset date to *after* the prior decision." Tr. 28 (emphasis added). This amended date is just twenty days after ALJ Mariano-Jackson's decision.

Although the hearing transcript shows that, perhaps, the month was "inaudible," counsel motioned for the onset date to be on the first day of the month in 2017 ("1 of 17"). Tr. 42. Counsel's statement "1 of 17" could not have meant October 1, 2017, or any earlier month when ALJ Mariano-Jackson's decision covered the period from March 31, 2015, through October 12, 2017. Necessarily, Shepherd's disability onset date is later. *Res judicata* applies if it is earlier than October 12, 2017. See Draper v. Sullivan, 899 F.2d 1127, 1130 (11th Cir. 1990) citing 20 C.F.R. § 404.905 ("The 'initial determination' is binding unless the claimant requests a reconsideration within the statutory period or the Secretary revises or reopens 'the initial determination.'"). The record is silent as to whether Shepherd sought review of ALJ Mariano-Jackson's decision.

ALJ Dixon also reviewed Shepherd's medical records from, at least, August 2016. Tr. 26. Based on the medical evidence, counsel's motion to amend the date, and ALJ Mariano-Jackson's decision, there is substantial evidence to support ALJ Dixon's decision to find November 1, 2017, is the disability onset date. It is not the province of this Court to say what Shepherd's correct disability onset date is. This Court may only determine whether the ALJ's decision is supported by substantial evidence; and it is. ALJ Dixon's decision was not arbitrary. No remand is warranted on this basis.

B. <u>ALJ Dixon's failure to reference or consider Shepherd's right shoulder impairment does not support a remand.</u>

Shepherd insists ALJ Dixon erred by failing to consider his right shoulder impairment, where the record shows a rotator cuff tear and degenerative changes of the acromioclavicular joint. ECF No. 9, pp. 18-19. The Commissioner argues this condition predates the relevant period; and a prior ALJ addressed the condition and found he could perform light work.

True, ALJ Dixon did not address Shepherd's right shoulder impairment, but this does not support a remand. Shepherd did not allege in his *second* application for benefits or at the hearing that his right shoulder impairment was a basis for his disability. <u>See</u> Tr. 41, 106-07, 122, 129, 134, 244, 247. An ALJ has no duty to consider a claim not presented. <u>Duffy v. Comm'r of Soc. Sec.</u>, 736 F. App'x 834, 838-39 (11th Cir. 2018).

Even if counsel had alleged the right shoulder impairment, as previously stated in Section V(B), this was not Shepherd's first application for benefits. In 2017, ALJ Mariano-Jackson considered the medical records through March 2017 and found Shepherd had several severe impairments including "right shoulder degenerative joint disease."[6] Tr. 82. ALJ Mariano-Jackson determined Shepherd had the RFC "to perform *less than* a full range of light work." Tr. 80. Again, *res judicata* bars relief. See Brown, 921 F.2d at 1237. If presented with a claim for the right shoulder impairment, ALJ Dixon would be required to reject it. No remand is warranted on this basis.

C. Remand is required where ALJ Dixon failed to identify any limitations stemming from Shepherd's migraines and does not support the RFC.

Shepherd argues that ALJ Dixon found his migraines were a "severe impairment" but did not "perform a function-by-function analysis" to determine the effect of the migraines on his RFC and did not discuss or articulate any resulting limitations from the impairment. ECF No. 9, pp.14-16. Shepherd maintains the decision as it relates to the RFC was legally insufficient and is unsupported by substantial evidence. The Court agrees.

---

[6] The medical records for the right shoulder impairment are from 2015. Tr. 684, 716, 809. Shepherd only claimed to a VA physician that a "[private] MRI showed a torn rotator cuff, he thinks and surgery was advised" but he want[ed] [a] VA opinion." Tr. 716. No medical records reflect a diagnosis for a torn rotator cuff.

1.  *ALJ Dixon ignored Shepherd's medical records documenting the migraines.*

As far back as 2016, the medical records note that the VA gave Shepherd's "tension headaches, claimed as migraine headaches" a 30% disability rating. Tr. 308, 322, 823, 845, 850. Contrary to the Commissioner's arguments and ALJ Dixon's decision, Shepherd's migraine condition is not solely documented as a disability rating. Although at many medical visits Shepherd presented as "negative for . . . headaches," Shepherd treated his headaches with fish oil capsules (three 1000 mg capsules twice a day) but, eventually, stopped. Tr. 313, 319, 334, 349, 355, 361, 368, 370, 405, 411, 425, 434, 437, 451, 463-64, 469, 482, 487, 500, 523, 532, 541, 550, 563, 572, 581, 590, 599, 610, 621, 635, 640, 645, 783, 785, 787.

On September 25, 2015, Shepherd presented to Dr. Robin Schlaudt for a primary care appointment. Tr. 716-17. Dr. Schlaudt noted that Shepherd has "frequent headaches." Tr. 716. On November 6, 2015, Shepherd presented to Dr. Siegrist for depressive symptoms and complained he suffered from headaches "since he was in the military" and, over time, "they have increased in number and severity . . . [and] occur[] almost daily." Tr. 697. Dr. Siegrist prescribed sertraline for depression. Tr. 700, 703. On December 18, 2015, Shepherd returned to Dr. Siegrist. Tr. 688-91. Dr. Siegrist noted that, since prescribing the sertraline, the frequency of the

headaches "dropped by at least 50%." Tr. 688. However, the following month, on January 22, 2016, Shepherd complained to Dr. Siegrist that the sertraline made him feel "sluggish, sleepy, and headachey." Tr. 676. Dr. Siegrist noted the headaches "improved on the 50mg of sertraline but . . . became more frequent and more severe [after] increasing the sertraline." Id.

On April 11, 2017, Shepherd presented to Dr. Wilburn E. Furniss complaining of allergy symptoms and headaches. Tr. 387. Dr. Furniss diagnosed Shepherd with allergic rhinitis. Id. Other medical records show that in the 1990s, Shepherd had symptoms consistent with an upper respiratory infection, which included headaches. Tr. 655.

In June 2022, Dr. Phillip Matar, a disability determinations services doctor, reviewed the record and found medical records prior to the date last insured were insufficient. Tr. 99. Nonetheless, Dr. Matar reviewed the records for "severe back problems, PTSD, sleep apnea, depression, HBP, [and] mood swings" but not migraines. Tr. 99. Dr. Holmes, a second disability determinations services doctor, addressed Shepherd's mood disorders and PTSD. Tr. 102. In July 2022, Dr. Arkin, a third disability determinations services doctor affirmed Dr. Matar's conclusions. Tr. 105-08. Then, Dr. Grubbs affirmed finding only mild limitations. Id. Shepherd had no mental limitations in understanding, remembering, or applying information, and mild

limitations in interacting with others, concentrating or maintaining pace, and adapting or managing himself. Tr. 109. Oddly, Dr. Arkin stated "[t]here is no indication that there is a medical opinion from any medical source." Tr. 110. Dr. Arkin found Shepherd's statements regarding his symptoms were only partially consistent with the record; thus, he was not disabled. Tr. 110.

Although "the review[s] contained no additional references" and Doctors Holmes, Matar, Arkin, and Grubbs were not Shepherd's treating physicians, ALJ Dixon found their "administrative findings were partially persuasive and adequately supported by the records." Tr. 28. Clearly, ALJ Dixon, and the administrative doctors, ignored medical records which specifically discussed the migraines and the successful and unsuccessful treatments. It cannot be maintained that substantial evidence supports ALJ Dixon's finding. This is particularly true in light of the VA's disability rating.

### 2. ALJ Dixon summarily ignored the VA's disability rating of Shepherd's migraines.

ALJ Dixon determined that, based on *"the medical evidence*," Shepherd had several "***severe***" impairments: "anxiety, post-traumatic stress disorder, depression, tinnitus, degenerative joint disease of the ankle, degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and ***migraines***." Tr. 21 (emphasis added). Shepherd's impairments are "*severe* . . . because they significantly limit [Shepherd's]

ability to perform basic activities." ALJ Dixon did not articulate how migraines significantly limit Shepherd's ability to perform basic activities or to work and did not reference any of the medical records that discussed the migraines and the successful and unsuccessful treatments.

As explained above, ALJ Dixon erred in stating that the only evidence of the migraines in the record was the VA disability rating when there is evidence of Shepherd's migraine condition, frequency, and treatments, even though he was not regularly treated for the condition. Tr. 27. "Remands are required when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001). ALJ Dixon's opinion that Shepherd's VA disability rating was "unpersuasive" is based on the substitution of his own judgment over any medical evidence and without support for the departure from the VA's decision. Tr. 28.

It is true that pursuant to 20 C.F.R. § 404.504, the ALJ is no longer required to give "great weight" to the VA's disability determination. The new regulation applies to claims filed on or after March 27, 2017. Under the previous standard, an ALJ was required to give "great weight," although not "controlling weight," to a VA determination. Brown-Gaudet-Evans v. Comm'r of Soc. Sec., 673 F. App'x 902, 903-04 (11th Cir. 2016). Consequently, the

ALJ was required to "seriously consider and closely scrutinize the VA's disability determination and . . . give specific reasons" for discounting the determination. Id.

Now, under the new regulations, the Commissioner "**will not** provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you [claimant] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (emphasis added). The ALJ will, however, "consider all of the *supporting* evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim. Id. (Emphasis added). Therefore, it appears the new regulation removes the requirement that an ALJ articulate any reasons for declining to give weight to VA disability ratings, but the ALJ must consider the evidence which allegedly supports the decision.

The district courts must "consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision." Noble v. Comm'r of Soc. Sec., 963 F.3d 1317, 1330 (11th Cir. 2020). First, "the Court must ask whether the ALJ's decision shows that []he considered the other agency's decision." Id. Then, "if the ALJ discussed the other agency's

decision, the second question is "whether substantial evidence in the record support the ALJ's decision to depart from the other agency's decision." Id.

In his decision, ALJ Dixon stated:

> The undersigned has also considered the claimant's service connected disability rating of 100% from the Veterans Administration. 20 CFR 404.1504 provides that a decision by any other agency, governmental or non-governmental, that a person is disabled is based on that agency's own rules and is not the decision of the [SSA] which must make a determination of disability based solely on Social Security law. A determination by another agency is not binding. Other disability programs deal primarily with a claimant's ability to perform the pre-injury occupation existent in significant numbers in the local or national economy, as must be considered under the Social Security law and regulations. Therefore, the undersigned finds the claimant's service-connected disability rating given by the VA **unpersuasive**.

Tr. 26. (Emphasis added). ALJ Dixon described in broad manner how the VA standards differ from those of the SSA but failed to discuss the medical records or any underlying evidence supporting the VA's determination of Shepherd's migraine headaches. This leaves the record unclear as to whether ALJ Dixon closely scrutinized the VA's determination and the basis on which he discounted the VA's rating. "It is not disputed that the VA's "disability" determination relies on different criteria than the SSA's determination. But that does not mean that the ALJ can summarily ignore the VA's determination." Brown-Gaudet-Evans, 673 F. App'x at 904. ALJ

Dixon's decision is at odds with the VA's evaluation, but it is not based on substantial evidence. See Maldonado v. Comm'r of Soc. Sec. 861 F. App'x 402 (11th Cir. 2021). In fact, ALJ Dixon denied there were any other records documenting the migraines: "[Shepherd's] treatment records identified tension headaches/migraines . . . as a condition identified as part of his disability ratings for the VA." Tr. 27. ALJ Dixon did not consider other parts of the medical record that show Shepherd complained to his doctors about his migraines, the frequency of them, or that they worsened when his prescription for sertraline was increased. Although some records pre-date the alleged disability onset date, it is still supporting evidence underlying the VA's decision that was ignored.

ALJ Dixon determined Shepherd's RFC "to perform light work" was based on Shepherd's "alleged limitations, objective medical findings, the opinions, the administered treatments, and . . . testimony at the hearing." Tr. 25. Summarily ignoring the medical records supporting the VA's disability determination constitutes reversible error requiring remand.

### 3. ALJ Dixon ignored Shepherd's testimony and subjective complaints about the effect of his migraines.

ALJ Dixon was required to consider the entire record – including, but not limited to, the medical records, the VA's decision, Shepherd's statements, daily activities, frequency of the migraine pain, effectiveness of

medications, and other factors. <u>See</u> 20 C.F.R. § 404.1529(c)(1), (3)(i-vii). This did not occur.

At the hearing, Shepherd testified about the debilitating effects of his migraine condition and the frequency and duration of them. Tr. 51-53, 58-59. On a "bad day," Shepherd tries to fight off headaches, usually, by sitting in his chair "inside the house not doing a thing. Not even with the TV on. Sometimes noise even really gets to me." Tr. 51. The migraines "come sometimes twice a day according to what kind of day I'm having and when they come it's a total debilitating day . . . can't stand bright light . . . can't listen to noise . . . I can't do anything." Tr. 52. The migraines often occur "10, 12, 15 days out of the month." <u>Id.</u> Medication does "not really" help Shepherd. <u>Id.</u> Shepherd's "migraine lasts about an hour on average and that's what I call a small migraine." Tr. 53. The PTSD symptoms and not getting enough sleep are triggers for Shepherd's headaches. Tr. 58-59.

ALJ Dixon posed the following hypothetical to the VE:

> If you could assume someone of the claimant's age, classification, educational background, and work experience, and assume that person is limited to a reduced range of light work as follows. Is able to lift, carry, and push, pull 10 pounds frequently, up to 20 occasionally. Person cannot climb ladders, ropes, or scaffolds but can occasionally climb stairs and frequently climb ramps. Person is able to frequently balance, but is limited to occasional kneeling, crouching, crawling, and stooping. Person is able to frequently reach, handle, finger, and feel

bilaterally. Person can tolerate no more than occasional exposure to hazards such as unprotected heights, heavy machinery, and *loud noises* . . . can sit anywhere between six to eight hours of an eight-hour workday but, probably, stand no more than four hours of an eight-hour workday, nor walk more than four hours of an eight-hour workday . . . limited to understanding, remembering, and carrying out simple instructions and performing simple tasks due to concentration deficits. This is defined as the ability to apply common sense, understanding to carry out uninvolved, written, or oral instructions and deal with problems involving a few concrete [inaudible] stemming from standardized situations . . . can interact with co-workers on an occasional basis but should be able to accept instructions or respond appropriately to supervisors on a frequent basis. . . can interact with the public on a less than occasional basis. . . should not engage in no complex decision making, and no more than occasional changes in a work setting or work environment. I find that based on the skill and work requirements, said person would not be able to perform any of the prior work as listed. Would there be other positions available for someone with that residual functional capacity and profile?

Tr. 62 (emphasis added). The VE testified Shepherd could perform three positions: electronics worker, #726.687-010; plastics assembler, #712.687-010; and injection molding tender, #556.685-038. Tr. 63.

ALJ Dixon offered the VE a second hypothetical:

Assume someone of the claimant's age, classification, educational background, and work experience. Assume that person this time is limited to a sedentary work, to the extent that said person would be able to lift no more than ten pounds, and the walking can be done in no more than two hours of an eight-hour workday, and no standing can be done in no more than two hours of an eight-hour workday? Would there be positions available for someone

of that given residual functional capacity, assuming said person would not be able to perform the prior work, as listed?

Id. The VE responded that Shepherd could perform three other positions: table worker, #739.687-182; final assembler, #713.687-018; and semi-conductor bonder, #726.685-066. Id.

ALJ Dixon asked the VE to consider an additional limitation to either RFC "since that person would be off task at least 15-20% during the course of a workday, how would that affect the number of positions in the national economy?" Tr. 63-64. The VE responded, "it would preclude sustained competitive employment . . . current literature indicates that an average individual's off task 10% of a given day, approximately 15 minutes. Once an individual exceed[s] that, they're unable to sustain competitive employment." Tr. 64. ALJ Dixon did not include any limitation in the hypothetical questions relating to Shepherd's migraine condition aside from the exposure to loud noises. ALJ Dixon did not include Shepherd's other symptoms -- a sensitivity to bright lights or debilitating days.

Counsel did not object to the hypotheticals or the VE's testimony. Ordinarily, an ALJ does not err in relying on the VE's testimony when counsel does not object to the testimony. However, because ALJ Dixon's RFC finding is not supported by substantial evidence -- the medical records, evidence

supporting the VA's decision, and Shepherd's subjective complaints were ignored and the hypotheticals to the VE did not consider the effects of the migraines -- a remand is warranted. It might be that, on remand, the ALJ may determine that Shepherd still has the RFC "to perform light work," that there are sufficient jobs in the national economy, and that Shepherd is not disabled. However, as it stands, such a decision is not supported by substantial evidence.

D. Because ALJ Dixon's RFC determination is not supported by substantial evidence and warrants a remand, the Court need not reach Shepherd's remaining claims.

Shepherd's remaining claims are related to a finding that he had the RFC to perform "light work":

1. ALJ Dixon did not resolve any inconsistencies with the VE's Testimony and the DOT as it applies to his noise, standing, and walking requirements. Injection molding tender conflicts with an RFC finding that Shepherd could occasionally work around loud machinery. ECF No. 9, pp. 8-9.

2. ALJ Dixon relied on the VE's flawed testimony that Shepherd could perform other work as an electronics worker and plastics assembler. These jobs are not available in sufficient numbers.

3. The injection molding tender job conflicts with the RFC findings.

The Commissioner already concedes that the injection molding tender job conflicts with the ALJ's RFC findings that Shepherd could, occasionally,

work around loud machinery and is not supported by substantial evidence. Therefore, the Court accepts this concession. The ALJ should consider this on the remand.

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a claimant can perform. Winschel, 631 F.3d at 1180. To make this determination, an ALJ may obtain the testimony of a vocational expert. Id. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Id. (citing Wilson, 284 F.3d at 1227). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." Jacobs v. Comm'r of Soc. Sec., 520 F. App'x 948, 950 (11th Cir. 2013). As explained above, in Section VI(C)(3), ALJ Dixon's hypotheticals to the VE were incomplete because they did not consider the effects of Shepherd's migraine condition, including Shepherd's subjective complaints. On remand, once the ALJ properly determines Shepherd's RFC, he must present the VE with complete hypothetical questions which comprise *all* of Shepherd's impairments, including his migraines.

The Court does not need to reach the issues of whether the ALJ failed to resolve any discrepancies with the VE's testimony, whether the VE's testimony was reliable, or whether there are jobs in significant numbers in the national economy which Shepherd could perform. Step five is the final step in the analysis. The ALJ must first determine Shepherd's RFC based on substantial evidence at step three before determining whether he can perform "past relevant work" (step four) and whether he "is able to do any other work considering his residual functional capacity, age, education, and work experience."

## VII.   Conclusion and Recommendation

The Clerk of Court shall **CORRECT** the case style to reflect that Martin J. O'Malley is the Commissioner of the Social Security Administration.

It is respectfully **RECOMMENDED** that the Court **REMAND** the Commissioner's decision because it is not supported by substantial evidence and is not premised on the proper legal principles. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d 1439. Finally, the case should be closed.

IN CHAMBERS at Tallahassee, Florida, on May 30, 2024.

**/s/ Martin A. Fitzpatrick**_____
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).